NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

TAMMY AND ERIC LIEBERMAN,

             Plaintiffs,

v.

CARNIVAL CRUISE LINES; JOHN/JANE DOES
(#1-10) (multiple, alternative, and fictitious
individuals and/or business entities), and ABC
business entities 1-10 (multiple, alternative, and
fictitious individuals and/or business entities),

             Defendants.

Civil Action No.: 13-4716 (JLL) (JAD)

**OPINION**

---

**LINARES**, District Judge.

    This matter comes before the Court by way of a motion for summary judgment filed by Carnival Cruise Lines ("Defendant"), pursuant to Federal Rule of Civil Procedure 56. (ECF No. 47.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies in part and grants in part Defendant's motion for summary judgment.

## BACKGROUND[1]

    On February 25, 2013, Tammy and Eric Lieberman ("Plaintiffs") booked passage for a

---

[1] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 51, Defendant's Rule 56.1 Statement of Facts ("SMF"); ECF No. 58-3, Plaintiffs' Responses to Defendant's Statement of Material Facts ("Opp. SMF"); ECF No. 58-4, Plaintiffs' Statement of Additional Material Facts ("SAMF"); ECF No. 60, Defendant's Reply to Plaintiffs' Statement of Additional Material Facts ("Reply SAMF")). The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

cruise on Defendant's vessel, the Carnival *Splendor*. (Def. SMF ¶ 4.) Mrs. Lieberman has Stage 4 terminal cancer, and the Complaint alleges that she "is permanently disabled" as a result. (ECF No. 1 ("Compl.") ¶ 7.) Plaintiffs booked the cruise through a travel agent, who, under authority from Plaintiffs, entered into a standard-form passenger contract on behalf of Plaintiffs. (Def. SMF ¶¶ 3-5, 8.) The contract contains clauses that generally limit Defendant's customers' ability to assert claims against Defendant, and expressly directs readers' attention to those clauses. (Def. SMF ¶¶ 9-10.) Pertinent to this matter, the contract also provides that "[a]ny Guest with special medical, physical or other needs requiring medical attention or special accommodation during the voyage is requested to notify Carnival in writing at the time of booking of such special need." (*Id.* ¶ 10.) Furthermore, the contract stipulates that passengers with special needs should contact Defendant's Special Needs Desk to request special accommodations. (*Id.*) Defendants maintain that Plaintiffs "acknowledged receipt and acceptance of the terms and conditions" of the contract "prior to sailing," and that Plaintiffs never advised Defendant in writing of any special needs. (Def. SMF ¶¶ 11-12.)

Plaintiffs do not dispute the terms of the contract itself; rather, they claim that the evidence in the record "does not reflect that the Plaintiffs themselves acknowledged receipt and acceptance of the Cruise Contract." (Pl. Opp. SMF ¶ 11.) Indeed, Plaintiffs assert that Defendant never produced "a signed contract by the Plaintiffs accepting any terms and conditions," and that Plaintiffs notified both the travel agent and a representative for Defendant of Mrs. Lieberman's disability. (*Id.* ¶¶ 11-12.) Plaintiffs further maintain that Defendant's representative assured Plaintiffs that they would have a "handicapped room" and "24-hour medical assistance in the event it was needed." (*Id.* (quoting ECF-No. 48-9 ("Tammy Lieberman Dep.") at 18:25-19:24, 20:8-

2

24.))

On March 31, 2013, Plaintiffs, along with their four children and Mrs. Lieberman's brother and sister, John and Angel Gabriel, boarded the *Splendor* for an eight-day cruise from Manhattan to the Bahamas. (Compl. ¶¶ 11, 13.) On April 1, Mrs. Lieberman slipped and fell on a puddle, caused by a spilt drink, directly outside of the elevator on the Lido Deck of the *Splendor*. (Pl. SAMF ¶¶ 1-4, 36.) John Gabriel ("Gabriel") observed Mrs. Lieberman's fall. (*Id.* ¶ 1.) Mrs. Lieberman and Gabriel observed that the puddle included "glass," "melted ice," and "skid marks that travelled all the way to the sliding doors" of a nearby pool, indicating that the spill had been present for quite some time. (*Id.* ¶¶ 4-5.) The pair further observed one of Defendant's employees, who saw the slip and fall and promised to return with help and a wheelchair; however, the employee "never returned." (*Id.* ¶¶ 7-8.) Plaintiffs eventually returned to their room. (*See* Compl. ¶ 28.)

From April 1 to April 4, Plaintiffs attempted to get assistance from the Defendant's medical facility to no avail.[2] (Pl. SAMF ¶¶ 11-22, 42.) According to Defendant, the *Splendor* "is staffed with two doctors and four nurses" and contains "a medical facility . . . [that] is available twenty-four hours per day." (Def. SMF ¶ 31.) Plaintiffs vigorously dispute that characterization. (Pl. Opp. SMF ¶ 31-38.) Specifically, they state that from April 1 to April 4, they called the *Splendor*'s front desk several times and each time were told that the medical facility was closed; that the medical facility was closed upon visiting it on April 3; that the front desk repeatedly failed to send a wheelchair to Plaintiffs' room despite promising to do so; and that medical staff was not available at all times. (Pl. SAMF ¶¶ 11-22, 42.)

---

[2] While not explicitly mentioned in any of the statements of fact, the Complaint alleges that Mrs. Lieberman's left foot was in "serious pain" for these three days, and that she could not easily walk. (*See* Compl. ¶¶ 28-32, 35.)

3

On April 4, the *Splendor* docked in Freeport, Bahamas and Plaintiffs visited the beach. (Def. SMF ¶ 42.)  Mrs. Lieberman's injury worsened as a result of her beach visit, to the point where Defendant escorted her back to the *Splendor* with a wheelchair.  (*Id.* ¶¶ 43-44.)

The following facts are heavily disputed.  Plaintiffs contend that upon returning to the *Splendor*, they visited the medical facility, where Mrs. Lieberman "was examined by a male nurse," who x-rayed her left foot.  (Pl. SAMF ¶ 44.)  The next day, Mrs. Lieberman visited the facility, and was seen by a doctor, who again x-rayed Mrs. Lieberman's left foot because the initial X-rays were irretrievably lost due to a malfunction.  (Def. SMF ¶ 46.)  Plaintiffs maintain that they did not visit the medical facility again, nor did they see more than one doctor.  To the contrary, Defendant contends that Mrs. Lieberman saw a doctor, Dr. Marin, on her April 4 visit to the facility, and saw a different doctor, Mr. Gonzalez, the next day.  (*Id.* ¶¶ 45, 46; ECF No. 48-13 ("Gonzalez Dep.") at 19:7-9, 19:24-20:4.)  Defendant also maintains that Mrs. Lieberman visited the medical facility after April 5, where a doctor explained her X-ray results to her.  (*See* ECF No. 48-12 ("Marin Dep.") at 51:24-52:3, 52:23-5.)  In any event, the Defendant's medical staff concluded that Mrs. Lieberman's left foot was not broken.  (Def. SMF ¶ 48.)

Plaintiffs returned to New Jersey on April 8, and Mrs. Lieberman saw her personal orthopedist.  (*Id.* ¶ 50.)  After two months of various X-rays and an MRI, during which time Mrs. Lieberman's orthopedist advised her to "stay off her foot for 6-8 weeks" and "wear a soft cast," Mrs. Lieberman was eventually diagnosed with a Jones fracture of her left foot.  (*Id.* ¶¶ 51-54; Pl. Opp. SMF ¶ 51.)

In light of the foregoing, Plaintiffs filed a seven-count complaint with this Court on August 6, 2013, asserting negligence; violations to the New Jersey Consumer Fraud Act ("CFA"); breach

4

of contract; breach of good faith and fair dealing; violations to New Jersey's Law Against Discrimination ("LAD"), the Rehabilitation Act of 1973, and the Americans with Disabilities Act ("ADA"); *respondeat superior*; and loss of consortium.[3]  (Compl.)  Plaintiffs premise this Court's jurisdiction on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  (*Id.* ¶ 2.)  Defendant now moves for summary judgment on all counts.  (*See* ECF No. 52 ("Mov. Br.").)  Plaintiff filed opposition (Opp. Br.) and Defendant replied (ECF No. 61 ("Reply Br.").)[4]

## LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she

---

[3] The Court notes that Plaintiffs have voluntarily dismissed their New Jersey LAD claim, their Rehabilitative Act of 1973 claim, and their ADA claim to the extent that it relies on Mrs. Lieberman's pre-injury disability, in their Opposition Brief, pursuant to Federal Rule of Civil Procedure 41(a).  (ECF No. 58 ("Opp. Br.") at 18.)

[4] As an initial matter, Defendant urges this Court to strike Plaintiffs' SAMF because Plaintiffs' statement "woefully and purposefully fail[s] to comply" with Local Rule 56.1.  (Reply Br. at 3.)  Although enforcement of the Court's Local Rules is no doubt important, "the purpose of certain district court local rules pertaining to motions is the '[f]acilitation of the court's disposition of motions, not punishment.'"  *Boswell v. Eoon*, 452 F. App'x 107, 111 (3d Cir. 2011) (alteration in original) (citing *Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)).  To the extent that Plaintiffs' SAMF is deficient, this Court finds that it is far from the deficiencies that warrant striking.  *See, e.g.*, *Mason v. Chase Home Fin., L.L.C.*, No. 11-4144, 2014 WL 37219, at *1 n.3 (D.N.J. Jan. 6, 2014) (including 56.1 statement as part of a brief and including legal conclusions); *Schneider v. Shah*, No. 11-2266, 2012 WL 1161584, at *2-3 (D.N.J. Apr. 9, 2012) (filing only an opposition brief without a separate 56.1 statement and not specifically responding to each disputed fact).  The Court finds that Plaintiff's submission "meets the principle embodied by the rule—that the parties narrow the key issues so the Court can adjudicate the motion without embarking on a judicial scavenger hunt for relevant facts."  *Schecter v. Schecter*, No. 07-419, 2008 WL 5054343, at *7 (D.N.J. Nov. 26, 2008).

has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

### B. Federal Maritime Law

In their initial complaint, Plaintiffs premise this Court's jurisdiction on diversity of citizenship, pursuant to 28 U.S.C. § 1332. (Compl. ¶ 2.)  However, in their briefs, both parties invoke admiralty jurisdiction and cite almost exclusively to federal case law. (Mov. Br. at 11-12; Opp. Br. at 5.)  "A plaintiff with a claim cognizable in the district court's admiralty jurisdiction and actionable on other jurisdictional grounds may invoke which ever jurisdiction is desired." *Fedorczyk v. Caribbean Cruise Lines, Ltd.,* 82 F.3d 69, 73 (3d Cir. 1996); *see also* Fed. R. Civ. P. 9(h).

However, while district courts are compelled to apply the forum state's law in diversity suits, *see Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941), "if the case sounds in admiralty, it would be inappropriate to apply New Jersey law or any other state's law, instead of federal admiralty law." *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002).  For a case to "sound in admiralty," the injury must: (1) have occurred in navigable water or have been caused by a vessel on land; (2) have a potential disruptive impact on maritime commerce; and (3) bear a substantial relationship to maritime activity. *Id.* at 131-32 (quotation

6

marks omitted) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)).

This Court is satisfied that this case sounds in admiralty. First, Mrs. Lieberman's injury occurred aboard the *Splendor* while on navigable waters. Second, cruise lines "are clearly engaged in maritime commerce," and tortious activity no doubt qualifies as potential disruptive impact. *Id.* at 132. Finally, although tort and contract claims may not appear to bear a substantial relationship to maritime activity, courts have routinely held otherwise. *See, e.g.*, *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590 (1991) (finding breach of contract claims governed by federal law); *Fedorcyzk*, 82 F.3d at 73 (3d Cir. 1996) (finding breach of contract, infliction of emotional distress, and negligence claims governed by federal law).

Thus, although Plaintiffs initially invoked diversity jurisdiction, because this case sounds in admiralty, this Court confers maritime jurisdiction to this matter, pursuant to 28 U.S.C. § 1333. Admiralty jurisdiction does not preclude this Court from simultaneously exercising supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). *See Grubart*, 513 U.S. at 548 (O'Conner, J., concurring) (noting that courts are not required to "exercise admiralty jurisdiction over *all* the claims"); *In re Aramark Leisure Servs.*, 532 F.3d 1169, 1175 (10th Cir. 2008) (listing cases). Accordingly, federal maritime law applies to all but Plaintiffs' New Jersey CFA claim.

## ANALYSIS

**A. Negligence and *Respondeat Superior* Claims**

Defendant principally argues that it had no notice of the spill, and therefore cannot be liable for breaching the duty of reasonable care it owed to Mrs. Lieberman.  (Mov. Br. at 13.) Specifically, Defendant contends that Plaintiffs cannot prove that the spill existed for a sufficient length of time for Defendant's employees to take reasonable actions. (*Id.* at 14-16.) Defendant argues that Plaintiffs' evidence of skid marks and ice cubes is speculative in nature and, even if true, shows an open and obvious danger to Mrs. Lieberman. (*Id.*) Defendant further argues that Plaintiffs' reliance on Defendant's knowledge of its slippery marble floors "is not a permissible theory of liability" because no reasonable alternative flooring exists. (*Id.* at 16-18.) Defendant also adds that because the marble flooring was not near an area likely to become wet, Plaintiffs cannot prove that Defendant's choice of flooring was negligent. (Reply Br. at 8-9.)

In response, Plaintiffs argue that sufficient, credible evidence exists to find Defendant liable, proposing two theories of liability. (Opp. Br. at 6-7.) First, Plaintiffs argue that the spill existed for a sufficient and discoverable length of time, arguing that the melted ice cubes, broken glass, and nearby employee establish Defendant's actual or constructive notice. (*Id.* at 8-11.) Second, Plaintiffs argue in the alternative that Defendant's use of its marble floors, known for their slipperiness, constituted negligence. (*Id.* at 12-13.)

This Court agrees that a reasonable jury could find that Defendant had constructive or actual or actual notice of the spill that caused Mrs. Lieberman's injury.

Negligence is a cause of action that has been recognized by federal maritime law "for more than a century." *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001). A

ship-owner owes passengers a duty of reasonable care, and successful plaintiffs must prove that a ship-owner breached that duty. *See Filer v. Foster Wheeler L.L.C.*, 994 F. Supp. 2d 679, 693 (E.D. Pa. 2014) (citing *Norfolk Shipbuilding*, 532 U.S. at 813-15). "The heart of [a] negligence case will turn on whether the vessel owner or operator had actual or constructive notice of the condition(s) causing the injuries alleged." *Wolf v. Tico Travel*, No. 10-2860, 2011 WL 5920918, at *6 (D.N.J. Nov. 28, 2011) (citations omitted).

Here, the record contains sufficient evidence to infer that Defendant had constructive notice. Specifically, the record discloses evidence, supported by several depositions, of melted ice cubes, visible skid marks, and broken glass. *See, e.g.*, *Cousin v. White Castle Sys., Inc.*, No. 06-6335, 2009 WL 1955555, at *8 (E.D.N.Y. July 6, 2009) (finding that proper evidence of constructive notice constituted "melted ice, dirt, or track marks," which would suggest that a spill "was on the floor for an appreciable amount of time"). A reasonable juror could find that the spill existed for a lengthy period of time based on both the melted ice cubes and dirty track marks. Likewise, a reasonable juror could infer that Defendant had constructive notice of the spill because it should have heard the glass breaking on the floor.

Defendant counters that it could not have had constructive notice because the Lido Deck was kept at warm temperatures. However, Defendant offers no evidence to support the claim that the ice must have melted quickly, aside from its contention that "it is impossible that ice cubes would have remained solid for a 'long time.'" (Mov. Br. at 14.) While Defendant's contention may be true, it is an issue of material fact for the jury, not the province of this Court.

Furthermore, sufficient evidence exists that Defendant may have had actual notice of the spill as well. Particularly persuasive to this Court is the evidence that one of Defendant's employee

was in the area of the spill immediately after Mrs. Lieberman's slip and fall.  Gabriel's deposition

indicates the following:

> A.  There was a worker in the area, it wasn't who helped [Mrs.
> Lieberman] get up and the guy never came back . . . .
> Q.  Who was the worker that was there?  How do you know he was
> working?
> A.  He was wearing colors, he was wearing the logo, the Carnival
> Cruise Line.
> Q.  Was he wearing clothing of some type?
> A.  He had clothing on, yeah.  He was wearing Carnival Cruise Line
> attire, he was an employee.

(ECF No. 48-11 ("Gabriel Dep.") at 28:17-29:4.)  Defendant counters that an employee could not

have seen the spill because an incident report was not filed.  (ECF No. 49 ("Romero Aff.") ¶ 31.)

While the Court's role at this stage is not to weigh the evidence, this Court agrees that, viewed in

the light most favorable to the Plaintiffs, there exists sufficient evidence that a reasonable juror

could conclude that Defendant's employee observed Mrs. Lieberman's slip and fall, never returned

to the scene, and failed to file an incident report.

Defendant argues that even if it had actual or constructive notice, the spill must have been

an open and obvious danger.  Generally, obvious dangers will absolve a defendant of negligence

in the premises liability context.  *See* Restatement (Second) of Torts § 343A (Am. Law Inst. 1965).

As a preliminary matter, Defendant fails to show that the doctrine of obvious dangers applies to

maritime law.  However, even if the doctrine does apply, Defendant has not established a sufficient

factual basis for such a contention.  Several depositions confirm that the spill was "clear," and thus

difficult to see.  (*See* Tammy Lieberman Dep. at 67:5-8; Gabriel Dep. at 27:3-7.)  No evidence

exists to show that Plaintiffs should have been aware of the spill, or that Defendant posted warning

signs about the slippery floors.  Likewise, this Court is cognizant of the fact that courts usually

find obvious dangers to be questions for the jury. *See, e.g., Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 540 (3d Cir. 1994) ("In many cases, the obviousness of a hazard will be a reasonably disputed issue of fact inappropriate for resolution by the district court on summary judgment." (quoting *Kirsch v. Plovidba*, 971 F.2d 1026, 1030 (3d Cir. 1994))). Thus, Defendant's counterargument is misplaced.

Because this Court has found sufficient, credible evidence on the record to support Plaintiffs' first theory of negligence regarding notice, the Court need not discuss Plaintiffs' second theory of negligence concerning Defendant's marble flooring. Likewise, Plaintiffs' *respondeat superior* claim is insufficiently developed, and appears to this Court to be an alternative theory of Defendant's liability, not a standalone claim. Thus, for the same reasons, the Court need not address Plaintiffs' *respondeat superior* claim. Accordingly, Defendant's motion for summary judgment as to the negligence cause of action is denied.

### B. New Jersey CFA, Breach of Contract, Breach of Good Faith

Defendant argues that its actions plainly did not violate the New Jersey CFA, relying heavily on *Veverka v. Royal Caribbean Cruises, Ltd.*, No. 12-3070, 2015 WL 1270139, at *6-10 (D.N.J. Mar. 18, 2015), in which, Defendant argues, the court granted summary judgment on a New Jersey CFA claim because the non-movant failed to show sufficient evidence. (Mov. Br. at 18-20.) Defendant maintains that the record here establishes that no misrepresentation occurred because, among other reasons, the *Splendor* was staffed with around-the-clock medical care; the medical facility was always open; and every customer could call the facility directly. (*Id.* at 21.) Further, Defendant suggests that Mrs. Lieberman did not affirmatively seek medical attention, and that Defendant's eventual care was not deficient. (*Id.* at 22-24.) Defendant further adds that

11

Plaintiffs' waiver of its pre-injury ADA claims is "at least tacit acknowledgment" that the *Splendor* had adequate medical care. (Reply Br. at 10-11.) With respect to the breach of contract and good faith claims, Defendant incorporates the same arguments. (*See* Mov. Br. at 30; Reply Br. at 9-12.)

In response, Plaintiffs argue that there is enough evidence in the record to support a CFA claim and that *Veverka* is distinguishable. (Opp. Br. at 14-16.) Plaintiffs contend that there is sufficient evidence to support a CFA claim premised on Defendants' alleged representation pertaining to handicap-accessible accommodations for Ms. Lieberman and with respect to the availability of medical care on the *Splendor*. (*Id.* at 15-17.) For example, Plaintiffs argue that Mrs. Lieberman's allegedly unsuccessful attempts to seek medical attention for three and one-half days, as well as Defendant's doctors' inconsistent testimonies, shows that Defendant clearly misrepresented the nature of medical care aboard the *Splendor*. (*Id.*) With respect to the breach of contract and good faith claims, Plaintiff incorporates the same arguments. (*See* Opp. Br. at 17.)

The Court agrees with Plaintiff that Defendant is not entitled to summary judgment on the CFA and contract claims. The Court finds that, viewing the record in the light most favorable to Plaintiffs, Defendant fails to meet its burden of showing no genuine disputes of material facts. The Court analyzes the CFA and contract claims separately.

    1. New Jersey CFA

The New Jersey CFA requires a showing that "the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17-25 (1994)). The CFA defines an unlawful practice as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the

knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2.[5]  Stated another way, "[u]nlawful conduct under the Act falls into three general categories: affirmative acts and knowing omissions, and violations of regulations promulgated under the Act." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (internal citations omitted).  An affirmative misrepresentation "has to be one which is material to the transaction . . . [and] made to induce the buyer to make the purchase." *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (N.J. Super. Ct. App. Div. 2004) (citing *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 607 (1997)).

The legislative history of the CFA reveals that, without exception, it is remedial legislation and, as such, "should be construed liberally." *Harnish v. Widener Univ. School of Law*, 931 F. Supp. 2d 641, 647 (D.N.J. 2013) (quoting *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 377 n.1 (2007)); *see also Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) ("The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud, and therefore to be liberally construed in favor of the consumer.") (internal citations and quotations omitted).  Likewise, the CFA was intended to be "one of the strongest consumer protection laws in the nation."  Governor's Press Release for Assembly Bill No. 2402, at 1 (June 29, 1971); *see also Gennari v. Weichart Co. Realtors*, 148 N.J. 582, 604 (1997) ("The history of the [CFA] is one of constant expansion of consumer protection.").  In light of the CFA's legislative history, this Court construes Plaintiffs' claim and supporting evidence liberally.

_____

[5] The CFA includes "services" in its definition of merchandise.  N.J.S.A. 56:8-1(c).

13

Defendant relies solely on the "unlawful practices" prong in its CFA analysis, and does not specifically address the loss or causation elements. Accordingly, the Court looks to the sufficiency of the evidence only for material misrepresentations regarding the *Splendor*'s medical care.[6]

The Court finds that Defendant has not made a prima facie showing that no genuine dispute of material facts exist in regards to its representations about the availability of medical care. While Defendant offers a recitation of its vessel's policies in regards to its medical facilities *in general*, Defendant offers no feasible explanation for why Mrs. Lieberman *in particular* struggled to obtain medical care aboard the *Splendor* for three and one-half days, aside from alleging that Mrs. Lieberman acted in bad faith by refusing to seek out medical attention. (Mov. Br. at 22-24.) However, Defendant points to no evidence on the record to establish Mrs. Lieberman's bad faith. To the contrary, the record discloses that Mrs. Lieberman was in excruciating pain and that she was concerned that her cancer may have spread to her foot. (Tammy Lieberman Dep. at 73:13-15, 104:7-15; ECF No. 48-10 ("Eric Lieberman Dep.") at 23:18-21, 28:18-21.) A juror can reasonably infer that a person in pain would affirmatively seek out medical attention. Thus, viewed in the light most favorable to Plaintiffs, this Court cannot accept Defendant's unsupported allegations as true.

---

[6] However, this Court is aware that

a private plaintiff under the CFA "must produce evidence from which a factfinder could find or infer that the plaintiff suffered *an actual loss*." "[B]y the time of a summary judgment motion, it is the plaintiff's obligation to be able to make such a demonstration or risk dismissal of the cause."

*DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 430 N.J. Super. 325, 340 (App. Div. 2013) (quoting *Thiedemann v. Mercedes-Benz USA, L.L.C.*, 183 N.J. 234, 251 (2005)). In light of this requirement, the Court finds that sufficient evidence exists to support Mrs. Lieberman's actual loss. Specifically, the Complaint alleges "aggravation of preexisting conditions, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, surgery, medical care and treatment," all of which are "permanent or continuing." (Compl. ¶ 67.) Furthermore, Mrs. Lieberman's deposition also shows the aggravation of her injuries and resultant complications. (*See* Tammy Lieberman Dep. at 138:6-139:9.)

14

Likewise, the record is replete with material, factual disputes that Defendant does little to address.  Perhaps the best example is whether Mrs. Lieberman saw a doctor on April 4.  Mrs. Lieberman's deposition discloses that she saw only a male nurse on April 4, who took X-rays and wheeled her back to her room.  (Tammy Lieberman Dep. at 90:11-92:4.)  Dr. Marin's deposition, however, discloses that he saw Mrs. Lieberman on April 4 for about a half hour and took her X-rays.  (Marin Dep. at 35:19-36:17.)  This dispute is significant because it goes to the heart of Plaintiffs' claim that Defendant misrepresented the nature of the quality of the *Splendor*'s medical care.  Weighing in on this matter would force the Court to make a credibility determination between Mrs. Lieberman and Dr. Marin, which the Supreme Court has expressly directed against at this stage.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment").

Furthermore, Defendant's reliance on this Court's decision in *Veverka* is unavailing.  In *Veverka*, the plaintiff, Ms. Veverka, slipped and fell on the cruise ship of defendant, Royal Caribbean Cruise Lines ("RCCL"), suffering a broken hip.  No. 12-3070, 2012 WL 6204911, at *1 (D.N.J. Dec. 11, 2012).  RCCL attended to Ms. Veverka's medical care shortly after the fall, as she "slept overnight in the medical unit of the cruise ship" and "was taken by ambulance" to a hospital once the ship landed.  *Id.*  Ms. Veverka then had hip surgery in New Jersey and suffered several complications as a result, which greatly inhibited her daily living.  *Id.*  Ms. Veverka sued RCCL for, *inter alia*, violations to the New Jersey CFA, alleging several misrepresentations, including misrepresenting the quality of medical care aboard the vessel.  *Id.* at *2.  The court

15

granted RCCL's motion for summary judgment, largely because Ms. Veverka failed to show any issues of material fact. *Veverka*, 2015 WL 1270139, at *6-10.

*Veverka* is distinct from the present matter for several reasons.   First, Ms. Veverka presented murky and conclusory CFA claims that broadly alleged that RCCL failed to provide "adequate medical care." *Id.* at *7.  In contrast, Plaintiffs have alleged specific misrepresentations made by Defendant, specifically access to "timely and high-quality medical care available at all times." (Compl. ¶ 16.)  Likewise, Ms. Veverka received medical care relatively promptly from RCCL, which undercut her claim as to the adequacy of RCCL's medical care. *See Veverka*, 2015 WL 1270139, at *7-8.  In contrast, the record in the present matter shows that Mrs. Lieberman had difficulty in accessing Defendant's purportedly 24/7 medical facilities, and thus buttresses Plaintiffs' claim. (*See, e.g.*, Gabriel Dep. at 35:20-24.)

Second, the Court in *Veverka* stressed the significance of the fact that the misrepresentations about the medical care were not material to Ms. Veverka at the time of her ticket purchase. *Veverka*, 2015 WL 1270139, at *8.  Again, in contrast, Mrs. Lieberman expressed the great importance of having high quality medical care to Defendant at the time of her ticket purchase because of her terminal medical condition.  (Compl. ¶ 15-17; Tammy Lieberman Dep. at 19:4-9.)

Finally, the plaintiff in *Veverka* pointed to almost no evidence on the record to substantiate her claims at the summary judgment stage.  Defendant affords much weight to that fact, arguing that this Court should grant its motion because "Plaintiffs . . . fail to submit sufficient evidence to carry its burden." (Mov. Br. at 20.)  However, as stated previously, the initial burden of proof is on the movant to show that no genuine issue of material fact exists.  Nothing in *Veverka* suggests

16

otherwise. *See* 2015 WL 1270139, at *3 ("The moving party must first show that no genuine issue of material fact exists" (citing *Celotex Corp.*, 477 U.S. at 323)). Furthermore, the record discloses sufficient factual disputes to allow a reasonable juror to find for Plaintiffs. Plaintiffs point to several depositions, which show Mrs. Lieberman's difficulty in obtaining health care aboard the *Splendor*. Specifically, the record shows that Plaintiffs called the front desk, and were subsequently told the medical facility was closed. (Tammy Lieberman Dep. at 54:6-55:6.) The record further discloses Plaintiffs' difficulty in obtaining a wheelchair, and Plaintiffs' discovery that the medical facility was physically closed in the middle of the day. (Tammy Lieberman Dep. at 50:22-51:3, 51:17-52:20, 76:23-77:6; Gabriel Dep. at 36:23-38:7). Such a well-developed record is at odds with the record in *Veverka*, where the court routinely found that it failed to support many of Ms. Veverka's contentions. *See* 2015 WL 1270139, at *7, *8, *9.

Thus, because Defendant has not made a prima facie showing that genuine disputes of material facts do not exist, and in light of the CFA's broad, remedial purpose, this Court denies Defendant's motion for summary judgment for the CFA claim.

### 2. Breach of Contract and Good Faith

"In order to state a claim for breach of contract in an admiralty case, a plaintiff must state: (1) the terms of the maritime contract; (2) that the contract was breached; and (3) the reasonable value of purported damages." *Overseas Philadelphia, LLC v. World Council of Credit Unions, Inc.*, 892 F. Supp. 2d 182, 188-89 (D.D.C. 2012) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir.2005)); *see also* Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 605–06, (1991). Furthermore, "[e]very maritime contract imposes an obligation of good faith and fair dealing between the parties in its performance and enforcement." *F.W.F., Inc. v.*

17

*Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1359 (S.D. Fla. 2007) *aff'd*, 308 F. App'x 389 (11th

Cir. 2009) (citing *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 913 (9th Cir.2003); *Misano di*

*Navigazione, SpA v. United States*, 968 F.2d 273, 274–75 (2d Cir.1992)).  Under the implied

covenant of good faith and fair dealing, "neither party shall do anything to injure or destroy the

right of the other party to receive the benefits of the agreement." *F.W.F.*, 494 F.Supp.2d at 1359

(internal quotation marks and citation omitted).  Accordingly, "[i]f the party to a contract evades

the spirit of the contract, willfully renders imperfect performance, or interferes with performance

by the other party, he or she may be liable for breach of the implied covenant of good faith and

fair dealing." *Overseas Philadelphia*, 892 F. Supp. 2d at 189-90 (citation omitted). A party to a

contract engages in bad faith by "violat[ing] standards of decency, fairness or reasonableness," or

"engag[ing] in any arbitrary or capricious action" towards the other party. *Id.*

The Court finds that Defendant is similarly not entitled to summary judgment on the

contract claims because it has not met its burden of showing no material fact disputes.  First, the

Court notes the dispute as to whether the terms of the standard Cruise Contract apply.  On the one

hand, Defendants maintain that Plaintiffs "acknowledged receipt and acceptance of the terms and

conditions" of the contract "prior to sailing."  (Def. SMF ¶ 11.)  In support, Defendants provide

the "SPMS Cruise Ticket Contract Acceptance Report, a computerized file documenting the

history of Plaintiffs booking their cruise and related matters." (*See* ECF No. 49, Affidavit of Mario

Romero, Ex. C.)  By contrast, Plaintiffs claim that this evidence "does not reflect that the Plaintiffs

themselves acknowledged receipt and acceptance of the Cruise Contract."  (Pl. Opp. SMF ¶ 11.)

Furthermore, even if the Court were to determine that the terms of the Cruise Contract applied,

there is a dispute as to whether Plaintiffs adequately informed Defendants of Plaintiffs medical

18

needs. (*Compare*, Def. SMF ¶ 21 ("Plaintiffs did not contact Carnival's Special Needs Desk"), *with* Pl. Opp. SMF ¶ 12 ("Plaintiff did inform Defendant Carnival of her special needs in advance of the cruise.").) Additionally, the Court notes the factual disputes outlined above with respect to the availability of medical care.

Accordingly, the Court denies Defendant's motion for summary judgment with respect to the breach of contract and good faith claims.

### C. ADA

Defendant argues that Mrs. Lieberman does not qualify for protection under the ADA, and that, even if she did, it did not have notice of her disability. (Mov. Br. at 27-30.) Defendant argues that Mrs. Lieberman's pre-injury disability is undeveloped by the record, noting testimony indicating that Mrs. Lieberman's cancer did not cause physical disability. (*Id.* at 29-30.) Additionally, Defendant contends that Plaintiffs did not follow the procedures in the standard-form contract to request accommodation for a disability, namely contacting Defendant's Special Needs Desk. (*Id.* at 27-28.)

In response, Plaintiffs argue that only Mrs. Lieberman's *post*-injury disability qualified for protection under the ADA. (Opp. Br. at 18.) They argue that Defendant's failure to accommodate Mrs. Lieberman after Defendant became aware of the injury constituted a violation. (*Id.*)

The Court finds that Plaintiffs have no cognizable claim under the ADA. Section 12101(b) defines the ADA's express purpose, notably "elimin[ating] discrimination against individuals with disabilities" through "clear, strong, consistent, [and] enforceable standards." Likewise, under Section 12117, the ADA borrows its remedies from Title VII, which include

> injunctive and other equitable relief, accrual of back pay and, through the enactment
> of the Civil Rights Act of 1991, compensatory damages for "future pecuniary

19

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" and punitive damages in the event the employer acts "with malice or with reckless indifference to the [plaintiff's] federally protected rights."

*Apontik v. Verizon Pa. Inc.*, __ F.3d __, __, 2015 WL 2417659, at *3 (E.D. Pa. May 21, 2015) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 253-54 (1994)). Nowhere in the statute does Congress define the statutory purpose so broadly as to include common law claims in tort, nor does it mention damages for personal injury.

Likewise, this Court would defy conventional canons of statutory construction to read in such an expansive definition of liability under the ADA. Generally, where Congress has expressed its intentions in clear and plain language, courts will not disturb the statutory language. *See, e.g.*, *Bartok v. DeAngelis*, No. 11-3710, 2012 WL 664928, at *8 (D.N.J. Feb. 29, 2012). "The short answer is that Congress did not write the statute that way. Indeed, the fact that it did not provides strong affirmative evidence" of Congress's intentions. *United States v. Naftalin*, 441 U.S. 768, 773 (1979). Therefore, this Court will not read personal injury causes of action into the ADA.

Accordingly, this Court grants Defendant's motion for summary judgment on Plaintiff's ADA claim.

**D. Loss of Consortium**

Defendant argues that "federal maritime law does not permit recovery . . . for spouses of passenger injury claimants," citing *Siegel v. Norwegian Cruise Lines*, No. 00-6271, 2001 WL 1905983, at *5 (D.N.J. May 14, 2001). (Mov. Br. at 31.) Plaintiffs do not contest this claim in their Opposition Brief. [7]

---

[7] Despite Plaintiffs' unaddressed argument, this Court still has an obligation to ensure that the movant has met its burden of proof to grant a motion for summary judgment. *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) ("Where the moving party has the burden of proof on the relevant issues, this means that the

20

The Court agrees with Defendant that general maritime law does not permit loss of consortium claims for passengers. Although this Court recognizes that loss of consortium claims for personal injury of non-seamen remains unaddressed by the Third Circuit, this Court notes that the Supreme Court's movement toward a uniform, federal standard for maritime actions facilitates this holding.[8] *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990). Indeed, the *Miles* Court stressed the significance of uniformity in federal maritime law, finding that denying derivative damages to seamen for wrongful death and survival claims is "in accordance with the uniform plan . . . Congress created" and "restore[s] a uniform rule." *Id.* at 33, 37. Uniformity would hardly exist in this district if a plaintiff could recover loss of consortium damages for an injured cruise ship passenger, but could not recover those same losses for a deceased seaman.

Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's loss of consortium claim.

## CONCLUSION

For the reasons above, the Court denies in part and grants in part Defendant's motion for summary judgment. An appropriate Order accompanies this Opinion.


DATED: November /2, 2015

JOSÉ L. LINARES
UNITED STATES DISTRICT JUDGE

---

district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." (citing *Celotex*, 477 U.S. 317.))

[8] This Court further notes that a number of circuits that have addressed the issue agree with this Court's position. *See, e.g.*, *In re Amtrak "Sunset Ltd." Train Crash*, 121 F.3d 1421, 1429 (11th Cir. 1997) (denying loss of society damages for maritime wrongful death and personal injury claims); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1408 (9th Cir. 1994) (denying loss of society damages for an injured cruise ship passenger); *Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1091-93 (2d Cir. 1993) (same as *In re Amtrak*).